**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| OVELL EVERS, SR., | ) | |
| | ) | |
| | ) | |
|    Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 13-2690 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
|    Respondent. | ) | |

**ORDER**

Before the Court is Petitioner Ovell Evers, Sr.'s ("Evers") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed on September 3, 2013. (ECF No. 1 ("§ 2255 Mot.").) Respondent United States of America ("the Government") filed a response on May 13, 2015. (U.S.'s Resp. in Opp'n to Def.-Pet'r's Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 11 ("§ 2255 Resp.").) Evers filed a reply in support of his § 2255 Motion on January 17, 2017. (Pet'r's Reply to U.S. Resp., ECF No. 24 ("§ 2255 Reply").)

For the following reasons, the § 2255 Motion is DENIED.

## I.  BACKGROUND

### A.  Case No. 07-20048

On February 13, 2007, Evers was indicted on two counts of producing child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  (Indictment 1–3, ECF No. 1 in 07-20048.)[1]  On January 11, 2008, after a three-day trial, a jury found Evers guilty on all three counts.  (Jury Verdict, ECF No. 69 in 07-20048 ("Jury Verdict").)  On June 9, 2008, the Court sentenced Evers to 235 months of imprisonment, 10 years of supervised release, $1,640 in restitution, and the forfeiture of certain property.  (J. 2–5, ECF No. 80 in 07-20048.)

Evers filed a notice of appeal on June 11, 2008.  (Notice of Appeal, ECF No. 81 in 07-20048; see also Br. of Def./Appellant, United States v. Evers, Case No. 08-5774 (6th Cir. June 15, 2010) ("Evers Sixth Cir. Br.".)  The U.S. Court of Appeals for the Sixth Circuit vacated the judgment as to one forfeited item and part of the restitution award.  United States v. Evers, 669 F.3d 645, 649 (6th Cir. 2012).  The conviction and sentence were otherwise affirmed.  The Court resentenced Evers on August 29, 2012, in accordance with the Sixth Circuit's

---

[1] References to "07-20048" are to filings in United States v. Evers, Case No. 2:07-cr-20048-SHM (W.D. Tenn.).

ruling.  (Am. J., ECF No. 103 in 07-20048 ("Am. J.").)  Evers did not file any further appeal.

### B.    Case No. 13-02690

On September 3, 2013, Evers filed the § 2255 Motion.  Evers asserts seven grounds of relief: (1) "A[ctual] I[nnocence]"; (2) "5th and 6th Amendment Violations Coming from a Tainted Jurist"; (3) "5th and 6th Amen[d]ment Violations by law enforcement[] [i]nhibiting [Defendant's] access to legal counsel"; (4) "Improper Restitution"; (5) "Ineffective Assistance Of Counsel"; (6) "The New Rule of [Alleyne v. United States] . . . Applies to the [Defendant's] situation . . ."; and (7) "The New Rule of [Alleyne] . . . is retroactive under [Teague v. Lane]." (Id. at PageID 6-17.)  On May 13, 2015, the Government filed a response to the § 2255 Motion. (§ 2255 Resp.)

On June 19, 2015, Evers filed a motion seeking additional time to file a reply in support of the § 2255 Motion.  (Mot. to Enlarge Period to Reply to U.S.'s Resp. to Evers's [28 U.S.C.] § 2255 Mot. to Vacate, Set Aside or Correct Sentence, ECF No. 12.)  The Court granted that motion on June 23, 2015.  (Order Granting Mot. for Extension of Time, ECF No. 13.)

On July 30, 2015, Evers filed a motion asking the Court, inter alia, to extend his reply deadline again.  (Mot. to Ct. to Order the Release of Trs. and Grant an Additional Extension of

3

Time to [Movant] to Adequately Reply to U.S.'s Resp. to [Movant's] [28 U.S.C. § 2255] Mot., ECF No. 14.) Evers requested the release of various transcripts and an additional "90 days from receipt of the transcripts" to submit his reply. (Id. at 1–2.)

On June 9, 2016, the Court entered an order granting in part Evers's request for transcripts. (Order 1, 4–5, ECF No. 17.) The Court ordered the Clerk of Court to send Evers copies of the January 2008 trial transcripts. (Id. at 5.) They were sent to Evers on June 27, 2016. That order also gave Evers an extension to file his reply. (Id.) His new deadline was 45 days "from the date of mailing of the [trial] transcripts." (Id.) The resulting reply deadline was August 11, 2016.

On August 18, 2016, Evers filed a Motion Seeking Two Types of Relief. (ECF No. 18 ("Relief Mot.").) Evers asked the Court to reconsider its decision to deny in part Evers's previous request for transcripts. (Id. at 1–2.) He also sought a third extension of time to file his reply. (Id. at 2.) On September 15, 2016, the Court entered an order addressing the Relief Motion. (Order, ECF No. 19.) The Court denied Evers's request for reconsideration of the Court's decision about transcripts. (Id. at 6–7.) It granted Evers's request for an extension, giving Evers "60 days from the entry of this Order to file his

reply." (Id. at 9.) The resulting deadline was November 14, 2016.

On November 17, 2016, Evers filed a motion requesting a fourth extension of time to file his reply. (Mot. to Ct. to Enlarge the Period of Time from Nov. 14, 2016 to Jan. 13, 2017 for [Movant] to Reply to the U.S.'s Resp. to Movant's 28 U.S.C. § 2255 Mot. to Vacate, [Set] Aside or Correct Sentence, ECF No. 21.) On November 23, 2016, the Court entered a text order granting Evers's request and giving Evers a deadline of January 13, 2017. (Text Order, ECF No. 23.) Evers filed his reply on January 17, 2017. (§ 2255 Reply.)

## II. STANDARD OF REVIEW

Evers seeks relief under 28 U.S.C. § 2255. (§ 2255 Mot.) Under § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

"To succeed on a § 2255 motion, a prisoner in custody must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or

law that was so fundamental as to render the entire proceeding invalid.'" McPhearson v. United States, 675 F.3d 553, 558-59 (6th Cir. 2012) (quoting Mallett v. United States, 334 F.3d 491, 496-97 (6th Cir. 2003)).

A prisoner must file his § 2255 motion within one year of the latest of:

> (1)  the date on which the judgment of conviction becomes final;
>
> (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

A § 2255 motion "'is not a substitute for a direct appeal.'" Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013) (quoting Regalado v. United States, 334 F.3d 520, 528 (6th Cir. 2003)). "[C]laims not raised on direct appeal," which are thus procedurally defaulted, "may not be raised on collateral review unless the petitioner shows cause and prejudice."

Massaro v. United States, 538 U.S. 500, 504 (2003) (citing cases); see also, e.g., Jones v. Bell, 801 F.3d 556, 562 (6th Cir. 2015) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)).

In the procedural-default context, the cause inquiry "'ordinarily turn[s] on whether . . . some objective factor external to the defense impeded counsel's efforts'" to raise the issue on direct appeal. Ambrose v. Booker, 684 F.3d 638, 645 (6th Cir. 2012) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration and ellipses in Ambrose); see also United States v. Frady, 456 U.S. 152, 167–68 (1982) (cause-inquiry standards in § 2254 cases apply to § 2255 cases). "[F]or cause to exist, an 'external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim.'" Bates v. United States, 473 F. App'x 446, 448–49 (6th Cir. 2012) (quoting McCleskey v. Zant, 499 U.S. 467, 497 (1991)) (emphasis removed).

To show prejudice to excuse default, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 168; see also Ambrose, 684 F.3d at 649.

Ineffective assistance of counsel can constitute cause excusing procedural default. Where a petitioner claims that a

procedural default occurred due to ineffective assistance of counsel, "relief under § 2255 [is] available subject to the standard of <u>Strickland v. Washington</u>, [466 U.S. 668 (1984)]." <u>Grant v. United States</u>, 72 F.3d 503, 506 (6th Cir. 1996); <u>see also</u> <u>Bell</u>, 801 F.3d at 562. Ineffective assistance of counsel, under the <u>Strickland</u> standard, can also serve as an independent ground for § 2255 relief. <u>See, e.g.</u>, <u>Campbell v. United States</u>, 686 F.3d 353, 357 (6th Cir. 2012). Evers's motion addresses both aspects of ineffective assistance.

To establish ineffective assistance of counsel, "[f]irst, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." <u>Strickland</u>, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." <u>Id.</u>

To demonstrate deficient performance by counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688. In considering an ineffective-assistance claim, a court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. . . . The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel"

8

guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687, 689).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. "In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Wong v. Belmontes, 558 U.S. 15, 27 (2009); Strickland, 466 U.S. at 693).

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id.

"Surmounting Strickland's high bar is never an easy task."
Padilla v. Kentucky, 559 U.S. 356, 371 (2010) (citing
Strickland, 466 U.S. at 689, 693).

> An ineffective-assistance claim can function
> as a way to escape rules of waiver and
> forfeiture and raise issues not presented at
> trial, and so the Strickland standard must
> be applied with scrupulous care, lest
> "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the
> right to counsel is meant to serve. Even
> under de novo review, the standard for
> judging counsel's representation is a most
> deferential one. Unlike a later reviewing
> court, the attorney observed the relevant
> proceedings, knew of materials outside the
> record, and interacted with the client, with
> opposing counsel, and with the judge. It is
> "all too tempting" to "second-guess
> counsel's assistance after conviction or
> adverse sentence." The question is whether
> an attorney's representation amounted to
> incompetence under "prevailing professional
> norms," not whether it deviated from best
> practices or most common custom.

Richter, 562 U.S. at 105 (citations omitted). "Counsel [cannot]
be unconstitutionally ineffective for failing to raise . . .
meritless arguments." Mapes v. Coyle, 171 F.3d 408, 427 (6th
Cir. 1999).

Alternatively, a petitioner may obtain review of a
procedurally defaulted claim by demonstrating his "actual
innocence." Bousley v. United States, 523 U.S. 614, 623–24
(1998). "To establish actual innocence, petitioner must
demonstrate that, in light of all the evidence, it is more

likely than not that no reasonable juror would have convicted him." Id. at 623 (quotation marks omitted) (quoting Schlup v. Delo, 513 U.S. 298, 327–28 (1995)).

After a petitioner files a § 2255 motion, the Court reviews it and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rules Governing Section 2255 Proceedings for the U.S. District Courts ("§ 2255 Rules") at Rule 4(b). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. The § 2255 movant is entitled to reply to the government's response. Id. at Rule 5(d). The Court may also direct the parties to provide additional information relating to the motion. Id. at Rule 7(a). If the district judge addressing the § 2255 motion is the same judge who oversaw the trial, the judge "'may rely on his or her recollection of the trial'" in denying the motion. Christopher v. United States, 605 F. App'x 533, 537 (6th Cir. 2015) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)).

### III. ANALYSIS

#### A.    Timeliness of § 2255 Motion

Evers was convicted on January 11, 2008. (Jury Verdict.) The Sixth Circuit affirmed Evers's conviction on February 10, 2012. (Sixth Circuit Op.) Because the Sixth Circuit Opinion vacated part of the judgment, however, the Court resentenced Evers on August 29, 2012. (Am. J.) Evers did not file an appeal after being resentenced.

When a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final at the end of the period during which he could have filed an appeal. See, e.g., Sanchez-Castellano v. United States, 358 F.3d 424, 426–27 (6th Cir. 2012). Under the Federal Rules of Appellate Procedure, that period is 14 days after entry of the judgment or order to be appealed. Fed. R. App. P. 4(b)(1)(A)(i). The Amended Judgment became final on September 12, 2012.

Evers filed the § 2255 Motion on September 3, 2013, less than a year after his conviction became final. The § 2255 Motion is timely.

#### B.    Ground One

Ground One of the § 2255 Motion argues that Evers is actually innocent because "[t]he images submitted as evidence, in this case, do not satisfy the definition of child pornography." (§ 2255 Mot. at PageID 6.) The Government

12

responds that Evers has not provided "any substantial evidence establishing that he is actually innocent of producing and possessing" the images at issue. (§ 2255 Resp. 8.) The Government represents that Evers's "trial counsel gave extensive consideration as to whether to file a [motion of the sort Evers suggests], but ultimately decided that such a proceeding was unnecessary because the images did indeed constitute child pornography . . . ." (Id.; see also Aff. of Randolph W. Alden ¶¶ 4–5 ("Alden Aff."), ECF No. 11-1.)

Ground One raises three issues. The first is whether Evers's actual-innocence claim can be a "freestanding" claim for relief in the § 2255 Motion. The Sixth Circuit has noted that, apart from death-penalty cases, the U.S. Supreme Court "has declined to recognize a freestanding innocence claim in habeas corpus." Wright v. Stegall, 247 Fed. App'x 709, 711 (6th Cir. 2007); see also Cress v. Palmer, 484 F.3d 844, 854–55 (6th Cir. 2007). To the extent Evers asserts that his actual innocence provides an independent basis for § 2255 relief, Ground One of the § 2255 Motion is DENIED.

The second issue Ground One raises is whether Evers's assertion of actual innocence allows him to raise claims that would otherwise be procedurally defaulted. For an assertion of actual innocence to excuse procedural default, "'a petitioner must show that it is more likely than not that no reasonable

juror would have found petitioner guilty beyond a reasonable doubt.'" Souter v. Jones, 395 F.3d 577, 590 (6th Cir. 2005) (quoting Schlup, 513 U.S. at 327); see also Bell v. Howes, 703 F.3d 848, 854–55 (6th Cir. 2012) (quoting Cleveland v. Bradshaw, 693 F.3d 626, 633 (6th Cir. 2012)). "'[S]uch a claim requires petitioner to support his allegations . . . with new reliable evidence –– whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –– that was not presented at trial.'" Souter, 395 F.3d at 590 (ellipses added) (quoting Schlup, 513 U.S. at 324).

Evers provides no new factual evidence of innocence. (See § 2255 Mot. at PageID 6.) He merely asserts that, under the test in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), the images at issue in his case "do not satisfy the definition of child pornography." (§ 2255 Mot. at PageID 6.) That argument is legal, not factual.

Evers was convicted of violating 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B). In relevant part, § 2251(a) makes it criminal to "use[], persuade[], induce[], entice[], or coerce[] any minor to engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct." Section 2252(a)(4)(B) makes it criminal to "knowingly possess[] . . . matter which contain[s] any visual depiction . . . if the producing of such visual depiction involves the use of a minor

engaging in sexually explicit conduct" and the "visual depiction is of such conduct." In both sections, "sexually explicit conduct" means, _inter alia_, "actual or simulated . . . lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). _Dost_ provides a six-factor test for analyzing whether an image is "lascivious" for purposes of the sexually-explicit-conduct definition. 626 F. Supp. at 832; _see also_ _United States v. Brown_, 579 F.3d 672, 680 (6th Cir. 2009) (applying _Dost_).

Evers's argument based on _Dost_ is not a substitute for new factual evidence of innocence. His argument cannot support an actual-innocence claim that excuses procedural default.

The third issue raised by Ground One is that Evers received ineffective assistance of counsel. (§ 2255 Mot. at PageID 16.) Evers argues that his trial counsel should have requested a pretrial evidentiary hearing at which the Court could have assessed the images at issue in Evers's case. (_Id._) Evers suggests that at that hearing, the Court could have used its own judgment to analyze the images under _Dost_, and that the Court would have determined that the images were not lascivious. (_Id._ at PageID 6.) Evers also represents that he asked his appellate counsel to make a _Dost_-type argument, but his appellate counsel refused. (_Id._ at PageID 8–9.)

As noted above, if a petitioner's claims were purportedly forfeited due to ineffective assistance, § 2255 relief is available if the petitioner meets the test in <u>Strickland</u>. <u>Grant</u>, 72 F.3d at 506. To show prejudice under <u>Strickland</u>, Evers must show that there was a reasonable probability that, but for his counsel's purported errors, the result of his trial or appeal would have been different. <u>Strickland</u>, 466 U.S. at 694, 697. Evers has not done so.

Trial counsel's decision not to request a pretrial <u>Dost</u> hearing did not prejudice Evers. The Court would have denied the request. "[L]asciviousness generally is a question of fact to be tried by the jury, not determined by the Court before the trial commences." <u>United States v. Ogden</u>, Cr. No. 06-20033-STA, 2008 WL 4415171, at *2 & n.6 (W.D. Tenn. Sept. 22, 2008) (citing <u>United States v. Frabizio</u>, 459 F.3d 80, 88 (1st Cir. 2006)); <u>see also</u> <u>Frabizio</u>, 459 F.3d at 88 ("No other circuit court, as best we can tell, has ever approved the use of the <u>Dost</u> factors in a pretrial proceeding to remove the consideration of the lasciviousness of an image from the jury."). Because the Court would have denied a request for a pretrial <u>Dost</u> hearing, Evers suffered no prejudice from failure to make the request. The decision by Evers's trial counsel not to request a pretrial <u>Dost</u> hearing was not ineffective assistance.

Evers has not shown that he was prejudiced by his appellate counsel's decision not to make a _Dost_ argument. Evers makes no argument suggesting that, had his counsel made a _Dost_ argument on appeal, it would have been persuasive. It is Evers's burden to make that showing. _Strickland_, 466 U.S. at 694. Evers's appellate counsel's decision not to raise _Dost_ on appeal was not ineffective assistance.

The § 2255 Motion is DENIED as to Ground One.

### C. Ground Two

Ground Two of the § 2255 Motion asserts that Evers's Fifth and Sixth Amendment rights were violated due to the "possibility of a 'tainted jurist.'" (§ 2255 Mot. at PageID 10.) Evers asserts that one of the jurors "was personally familiar with and had knowledge of" Ovell Evers, Jr., one of the witnesses (and Evers's son). (_Id._) Evers claims that "[t]he judge [and his trial] attorney did not exhaust all means to identify and disqualify the jurist." (_Id._) The Government responds that at trial Evers's counsel immediately apprised the Court of "the alleged familiarity between the witness and the juror," that the trial judge undertook "a diligent inquiry," and that counsel for both sides concluded that "'there was no reason to excuse the juror.'" (§ 2255 Resp. 9 (quoting Alden. Aff. 3).)

As a threshold matter, Evers did not raise this issue on appeal. (_See generally_ _Evers_ Sixth Cir. Br.; _see also_ _Evers_,

669 F.3d at 649 (listing appeal grounds).)  The issue is thus arguably procedurally defaulted.  See, e.g., El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002).  The Government, however, does not argue that Evers procedurally defaulted this issue.  (See generally § 2255 Resp.)  Regardless of whether the issue is procedurally defaulted, Evers's argument lacks merit.

"The Sixth Amendment . . . guarantees a criminal defendant a trial by an impartial jury."  Williams v. Bagley, 380 F.3d 932, 943 (6th Cir. 2004) (citing Morgan v. Illinois, 504 U.S. 719, 726-27 (1992)).  "The presence of even a single biased juror deprives a defendant" of that right.  Id. at 944 (citing Morgan, 504 U.S. at 729).  "A juror need not be 'totally ignorant of the facts and issues involved,' and it is 'sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'"  United States v. Herrera, 636 F. App'x 250, 256 (6th Cir. 2016) (quoting Murphy v. Florida, 421 U.S. 794, 800 (1975)).

Evers nowhere asserts that the allegedly "tainted" juror was actually biased -- that is, "he does not claim that this juror was in fact biased toward the prosecution."  Cutts v. Smith, 630 F. App'x 505, 507 (6th Cir. 2015).  Evers's argument appears to be "implied bias" -- that is, he suggests the Court should make a "'conclusive presumption that [the] juror [was] biased' based exclusively on 'the relationship between a

prospective juror and some aspect of the litigation.'" Id. at
507–08 (quoting United States v. Frost, 125 F.3d 346, 379 (6th
Cir. 1997); Johnson v. Luoma, 425 F.3d 318, 326 (6th Cir.
2005)).  Evers appears to suggest that the Court should infer
the relevant juror's bias because the juror knew Ovell Evers,
Jr. (§ 2255 Mot. at PageID 6.)

The Sixth Circuit has noted that, under Supreme Court case
law, it is an open question whether the implied-bias doctrine is
still viable.  See, e.g., Cutts, 630 F. App'x at 507–09
(discussing Supreme Court implied-bias doctrine and determining
that doctrine "is not clearly established"); see also, e.g.,
Lang v. Bobby, No. 5:12 CV 2923, 2015 WL 1423490, at *45–46
(N.D. Ohio Mar. 27, 2015).  Because Evers's only bias argument
is an implied-bias argument, if the implied-bias doctrine is no
longer viable, Evers's bias argument must fail.

The Court need not address the viability of the implied-
bias doctrine.  Even if the doctrine were viable, Evers's
situation is not like those in which courts have found implied
bias.  In Cutts, the Sixth Circuit considered the implied-bias
doctrine in a case where a juror had previously been involved in
a search for one of the defendant's victims:

> "In those circuits that recognize the
> principle of implied bias, resort to it has
> been limited 'to those extreme situations
> where the relationship between a prospective
> juror and some aspect of the litigation is

> such that it is highly unlikely that the
> average person could remain impartial in his
> deliberations under the circumstances.'"
> [In <u>Smith v. Phillips</u>, 455 U.S. 209 (1982)],
> Justice O'Connor provided some examples of
> sufficiently extreme circumstances: "a
> revelation that the juror is an actual
> employee of the prosecuting agency, that the
> juror is a close relative of one of the
> participants in the trial or the criminal
> transaction, or that the juror was a witness
> or somehow involved in the criminal
> transaction." None of these apply on their
> face to Cutts's case.

630 F. App'x at 510; <u>see also</u> <u>Lang</u>, 2015 WL 1423490, at *45–46 (finding that even if implied-bias doctrine were viable, it did not apply where juror's stepfather was brother of victim of murder for which defendant was on trial).

Evers has made no showing that the juror in his trial presented the sort of "extreme situation" in which implied bias could arise. At most, he has alleged that a juror knew a trial witness. That is not enough to ground an implied-bias claim.

Evers also argues that he received ineffective assistance of trial counsel with respect to his juror-bias argument. He contends that his counsel "did not exhaust all means to identify and disqualify the [juror]." (§ 2255 Mot. at PageID 10; <u>see also</u> <u>id.</u> at PageID 16.)

To argue ineffective assistance successfully, Evers must show deficient performance and prejudice. <u>Strickland</u>, 466 U.S. at 687. To show prejudice, Evers must show a reasonable

probability that, but for his counsel's alleged errors, the result of his trial would have been different. Id. at 694.

Evers has made no such showing. He has, at best, alleged that one juror at his trial knew one of the witnesses. Discussing Evers's juror-bias claim, Evers's trial counsel represents:

> As I recall, [the Court] made inquiry regarding the matter and satisfied counsel for both sides that there was no reason to excuse the juror. I also recall that the juror's responses in inquiries both in voir dire and to the issue raised by Mr. Evers satisfied counsel for both parties and the Court that the juror could be impartial.

(Alden Aff. ¶ 7.) Evers's counsel did take steps to determine whether the relevant juror was biased. In his § 2255 Reply, Evers says nothing to dispute his trial counsel's affidavit, or to suggest why further action by his trial counsel would have been effective. Evers has made no showing that further action by his counsel would have caused a different result. He has not shown prejudice, and thus has not shown ineffective assistance as to his juror-bias claim.

The § 2255 Motion is DENIED as to Ground Two.

### D. Ground Three

Ground Three of the § 2255 Motion asserts that on January 19, 2007, authorities violated Evers's constitutional rights by

refusing his request for counsel.  (§ 2255 Mot. at PageID 12.)
Evers describes that refusal as follows:

> On or about January 19, 2007, [I]
> volunteered to cooperate with Memphis
> [P]olice detective [I.L.] Beck by meeting
> with [him] and [Sergeant E.S.] Halfacre at
> their office . . . .  During the interview I
> told them that I wanted to see my attorney.
> The officers asked me to sign a consent form
> to search my computers, which I complied.
> And when I attempted to leave the
> officers['] presence [D]etective Beck
> commanded that I ride with them, in their
> squad car, out to my residence.  I asked was
> I under arrest at that time and [Sergeant]
> Halfacre stated no, but I am riding with
> them no matter what.  So [Sergeant] Halfacre
> searched my body and both officers led me to
> their squad car[,] opened the rear door[,]
> and placed me inside.  Once at my residence
> I was denied access to my home phone when
> the FBI agent ordered me out of the room.
> Then another officer stood guard over me
> while other officers searched my computers.
> Afterwards [D]etective Beck ordered me back
> into the squad car and drove me back to my
> vehicle downtown across from the police
> department.

(Id.)

Evers's denial-of-counsel argument is based on two events.
First, after Evers asked to see his attorney, Memphis Police
Department personnel presented Evers with, and he signed, a
consent form permitting a search of his home.  Second, while
authorities searched Evers's computers, Evers "was denied access
to [his] home phone," which he could have used to contact
an attorney.

It is unclear how Evers believes that this alleged denial of counsel affected his trial. (See generally id.) Evers argues that the police officers' actions violated his rights under the Fifth and Sixth Amendments. (Id. at PageID 12.) Evers says, however, that he believes his counsel should have raised the denial-of-counsel argument at a hearing on two motions to suppress. (See, e.g., id. at PageID 17 ("Counsel did not address [the denial-of-counsel] violation during the suppression hearing. Counsel was deficient in his constitutional duty in this instance.").) The Court construes Evers to argue that, because he was denied access to counsel before and during the search of his home, the Court erred by admitting at trial any materials uncovered during the search. That argument is grounded in the Fourth Amendment, not the Fifth or Sixth Amendment.[2] The Court thus construes Evers's denial-of-counsel argument to be based on the Fourth Amendment.

---

[2] Some passages in the § 2255 Motion suggest that Evers's argument is that denial of access to counsel violated Evers's constitutional rights in some way independent from the police's gathering of evidence. (See, e.g., § 2255 Mot. at PageID 16 (stating, in relation to Ground Three, that "[b]y denying me liberty, without being under arrest, the police violated my 5th and 6th [Amendment] rights under the U.S. Constitution").) Evers never specifies how. Conclusory claims like this are "insufficient to warrant § 2255 relief." Lovejoy v. United States, Case No. 95-3968, 1996 WL 331050, at *3 (6th Cir. June 13, 1996) (citing Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992)); see also Dockery v. United States, No. 12-2629-STA-

In *Ray v. United States*, the Sixth Circuit addressed the appropriateness of Fourth Amendment claims in § 2255 proceedings:

> As the Supreme Court has explained, the Fourth Amendment exclusionary rule "is a judicially created remedy rather than a personal constitutional right" whose purpose is "to safeguard Fourth Amendment rights generally through its deterrent effect." It is, thus, a structural remedy designed to exclude evidence so as to deter police misconduct, not to "redress the injury to the privacy of the victim of the search or seizure." Given its character, the Supreme Court has concluded that consideration of the exclusionary rule has "minimal utility . . . when sought to be applied to Fourth Amendment claims in a habeas corpus proceeding." For these reasons, the Court in [*Stone v. Powell*, 428 U.S. 465 (1976)] concluded "that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." We see no reasoned basis to distinguish between § 2254 and § 2255 when applying the Supreme Court's holding in *Stone*.

721 F.3d at 762 (ellipses in original) (citations omitted). Under *Ray*, the Court need not address Evers's denial-of-counsel argument unless Evers shows he was denied an opportunity for

_____

CGC, 2015 WL 1486174, at *12 (W.D. Tenn. Mar. 31, 2015) (citing *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013)).

full and fair litigation of that argument at trial and on direct review.

Evers makes no such showing. To the contrary, the record shows that Evers's counsel made a denial-of-counsel argument at a motion-to-suppress hearing at which Evers sought suppression of any evidence obtained from the search of Evers's home. (See, e.g., Suppression Hr'g Tr. 53–54, ECF No. 95 in 07-20048 ("First Suppression Hr'g Tr."); Suppression Hr'g Tr. 2–5, ECF No. 94 in 07-20048 ("Second Suppression Hr'g Tr.").) At that hearing, the Court specifically determined that the failure to provide Evers with counsel after his request meant that the consent form that Evers signed could not justify the later search. (Second Suppression Hearing Tr. 2–5, 19.) Evers had an opportunity to litigate his denial-of-counsel claim in the district court and on direct review. The Court need not address the denial-of-counsel argument in this § 2255 proceeding.

Evers also argues, however, that he received ineffective assistance of counsel as to his denial-of-counsel claim. (See, e.g., § 2255 Mot. at PageID 17.) He argues that he did not raise the denial-of-counsel issue on his direct appeal because his "counsel failed to collaborate with [him]." (§ 2255 Mot. at PageID 12.) He also contends that, during the motion-to-suppress hearing, his trial counsel did not pursue a line of questioning that Evers wanted him to pursue. (Id. at PageID 16

("During cross examination of [D]etective Beck, counsel paused in his cross examination and asked this defendant about any other information or questions that I needed answered. Defendant explained to counsel, at that time, about the police inhibiting my immediate access to a lawyer. . . . Counsel did not address this violation during the suppression hearing.").)

Under _Ray_, "though free-standing Fourth Amendment claims cannot be raised in collateral proceedings under . . . § 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." 721 F.3d at 762. Courts assess such ineffective-assistance claims under the _Strickland_ standard. _Id._ (citing _Strickland_, 466 U.S. at 687). To successfully argue ineffective assistance under _Strickland_, Evers must show deficient performance and prejudice. _Strickland_, 466 U.S. at 687.

To show prejudice, Evers must show a reasonable probability that, but for his counsel's alleged errors as to the denial-of-counsel claim, the result of Evers's trial or appeal would have been different. _Id._ at 694. Evers cannot show prejudice based on his counsel's failure to pursue the denial-of-counsel argument as Evers wished.

On January 18, 2007, Sergeant Beck submitted an Affidavit for Search Warrant to Judge W. Mark Ward of the Shelby County

Criminal Court. (Affidavit for Search Warrant in 07-20048, ECF No. 41.) The affidavit sought a warrant to search Evers's home based on the suspected presence of certain property, including a digital camera, photographs, a personal computer, and various accessories. (Id.) Later that day, Judge Ward issued a search warrant on the basis of Beck's affidavit. (Search Warrant in 07-20048, ECF No. 41.) The warrant permitted Beck "to make immediate search of" Evers's home for the property specified in the affidavit. (Id.)

The search was performed on January 19, 2007. (Search Warrant Return in 07-20048, ECF No. 40-1 at PageID 63.) During the search, authorities seized various items. (Id.) These included a personal computer on which investigators found the images for which Evers was later prosecuted. See, e.g., Evers, 669 F.3d at 650.

Before trial, Evers's counsel filed two motions to suppress the fruit of the search. (First Mot. to Suppress and Supporting Mem., ECF No. 40 in 07-20048 ("First Mot. to Suppress"); Second Mot. to Suppress and Supporting Mem., ECF No. 42 in 07-20048 ("Second Mot. to Suppress").) The First Motion to Suppress argued that Beck's probable-cause affidavit did not support a probable-cause finding. (First Mot. to Suppress 3-9.) It argued that when officers executed the search warrant, their actions were "unreasonable" under the Fourth Amendment because

27

the officers conducted an "impermissible general search." (Id. at 9–10.) It argued that the exclusionary rule's good-faith exception did not apply to the search of Evers's premises. (Id. at 10–16.) Finally, it argued that "[t]he Consent to Search," the "consent form" the § 2255 Motion discusses in Ground Three, "does not save the search in this case conducted pursuant to an invalid warrant." (Id. at 16–18.)

The Second Motion to Suppress argued that, even if Judge Ward's search warrant permitted the seizure of the digital camera and computer found at Evers's home, the warrant did not permit them to be searched. (Second Mot. to Suppress 1.) It argued also that Evers's signed consent form did not give valid consent to search those items. (Id.)

Following an evidentiary hearing, the Court denied the First Motion to Suppress "in all . . . respects" except "as to Consent to Search." It also denied the Second Motion to Suppress. (Minutes, ECF No. 50 in 07-20048 ("Suppression Hr'g Minutes"); see also Second Suppression Hr'g Tr. 18–36 (transcript of oral ruling).) The result was that the Court determined that the search warrant was valid, that it authorized the seizure and search of Evers's digital camera and relevant personal computer, and that the fruits of the search were admissible.

The Court ruled in Evers's favor on his consent-to-search argument, based on the fact that, before signing the consent form, he asked to, but was not permitted to, speak with counsel. (Suppression Hr'g Minutes; Second Suppression Hr'g Tr. 19, 36.) That ruling must be understood in light of the Court's other rulings. Because Evers prevailed on his consent-to-search argument, if the search warrant had been invalid, Evers's signed consent would not have cured that invalidity, and the fruits of the search would have been inadmissible. The Court held, however, that the search warrant **was** valid.

Evers does not explain how his denial-of-counsel argument could affect the validity of the search warrant, nor can he. Judge Ward signed the warrant on January 18, 2007, the day before the denial of counsel occurred. It would have been futile for Evers's trial or appellate counsel to argue that any denial of counsel to Evers affected the propriety of the search warrant. Because Evers has made no showing of prejudice, he has not made a showing of ineffective assistance of counsel as to his denial-of-counsel claim.

The § 2255 Motion is DENIED as to Ground Three.

### E. Ground Four

Ground Four of the § 2255 Motion contends that "[t]he court granted 'victim' restitution without proof of lost wages." (§ 2255 Mot. at PageID 13.) Because "[t]he alleged victim

failed to prove" how Evers "created a loss in wages," Evers argues that the restitution award violated "Due Process and Justice." (Id.) The Government responds that "[t]his issue has already been brought before and decided by the Sixth Circuit Court of Appeals," making Ground Four moot. (§ 2255 Resp. 11–12.)

Ground Four addresses restitution to Ovell Evers, Jr. Ovell Evers, Jr., was the guardian of M.E. –– the minor in the images in this case. The restitution award to Ovell Evers, Jr., was based on his missing work to take M.E. to court and to counseling appointments. Evers argues that, because Ovell Evers, Jr., worked the night shift, he did not need to miss work to take M.E. to court and to counseling sessions. (§ 2255 Mot. at PageID 13.) Thus, the $1,500 lost-wages award to Ovell Evers, Jr., would be inappropriate. (Id. at PageID 13, 16.)

As a threshold matter, because relief under § 2255 is available only for prisoners "claiming the right to be released," challenges to restitution awards are generally not cognizable under § 2255. See, e.g., United States v. Washington, 172 F.3d 50, 1998 WL 898878, at *2 (6th Cir. 1998) (citing United States v. Watroba, 56 F.3d 28, 29 (6th Cir. 1995)); see also United States v. Spraggins, Case No. 15-20111, 2016 WL 3254580, at *2 (E.D. Mich. June 14, 2016). As a stand-alone argument, Evers's night-shift argument is not cognizable.

A claim of ineffective assistance of counsel as to a restitution challenge is cognizable in a § 2255 proceeding. See, e.g., Weinberger v. United States, 268 F.3d 346, 351–52 (6th Cir. 2001); Singh v. United States, No. 1:08-CV-318, 2009 WL 1770656, at *3 (W.D. Mich. June 23, 2009). Evers argues that he received ineffective assistance as to his night-shift argument. (§ 2255 Mot. at PageID 14, 16.) He contends that his counsel failed to pursue the night-shift argument at sentencing and on appeal. (Id.)[3] That challenge is cognizable in Evers's § 2255 challenge.

To succeed on his ineffective-assistance claim as to the night-shift argument, Evers must meet the Strickland standard. See, e.g., United States v. Barry, 647 F. App'x 519, 523 (6th Cir. 2016); Ratliff v. United States, 999 F.2d 1023, 1026 (6th Cir. 1993). That is, he must show deficient performance and prejudice. Strickland, 466 U.S. at 687.

To show prejudice, Evers must show that there was a reasonable probability that but for his counsel's failure to

---

[3] Evers's counsel made numerous restitution-related arguments before the trial court and to the Sixth Circuit, but those arguments did not specifically include Evers's present night-shift argument. (See, e.g., Def.'s Position with Regard to Sentencing Factors, Sentencing Mem., Request for Downward Departure, and Request for Downward Departure 2–6, ECF No. 72 in 07-20048; Sentencing Hr'g Tr., ECF No. 88 in 07-20048 (hearing on May 23, 2008); Sentencing Hr'g Tr., ECF No. 86 in 07-20048 (hearing on June 9, 2008); Evers Sixth Cir. Br. at 27–34 (issues raised on appeal).)

raise the night-shift argument at sentencing or on appeal, Evers's restitution challenge would have succeeded. Id. at 694. He cannot do so, because the night-shift argument lacks merit.

Evers's night-shift argument assumes that, if it were physically possible for Ovell Evers, Jr., to work nights and take M.E. to court and to counselling sessions during the day, a restitution order compensating Ovell Evers, Jr., for lost wages would be inappropriate. The argument appears to be that Ovell Evers, Jr., should have continued to work at night and fulfill his responsibilities as guardian during the day. Evers provides no authority for that proposition. It was implicitly rejected in the Sixth Circuit's discussion of proximate cause on Evers's appeal:

> Applying these [proximate-cause] principles to the present case, we hold that the district court did not err in finding that [Ovell Evers, Jr.] was a victim within the meaning of § 2259(c), that his claimed lost income in the amount of $1,500, which was documented, was a covered loss under the statute, and that this loss was proximately caused by Evers' criminal conduct. **[Ovell Evers, Jr.'s] lost wages were directly attributable to his attendance at various stages of the investigation and trial in support of the victim. It is reasonably foreseeable that the parent or guardian of a minor victim of sexual exploitation will attend proceedings related to the prosecution of the case and, as a consequence, miss work.**

Evers, 669 F.3d at 659 (emphasis added).

Even if Evers's counsel had made the night-shift argument at trial or on appeal, it would not have succeeded. Evers has not shown prejudice as a result of his counsel's failure to make that argument. He has not shown that he received ineffective assistance as to that argument.

The § 2255 Motion is DENIED as to Ground Four.

### F.   Ground Five

Ground Five of the § 2255 Motion asserts that Evers received ineffective assistance of counsel. (§ 2255 Mot. at PageID 16.) In Ground Five, Evers points out ways that his counsel ostensibly failed to assist him effectively as to his arguments in Grounds One through Four. (Id. at PageID 16–17.) As discussed in Sections III.B through III.E above, those arguments fail.

Ground Five contains other general assertions about ineffective assistance:

> Counsel was deficient in his constitutional duty as an advocate for this defendant when he failed to fully collaborate on this case with his client. Counsel failed to file motion[s] for discovery; failed to conduct pre-trial investigations and failed to discuss trial strategy, and prepare his client for trial. The trial date came as a totally uninformed decision and surprise to the defendant. . . .
>
>    . . . . Throughout the [defendant's] trial defendant observed counsel being distracted from issues being presented to

the jury by the prosecution. The defendant
observed counsel periodically texting on a
cellphone during trial. By not devoting
[counsel's] full undivided attention to the
[trial's] proceedings [counsel] displayed
disloyalty to this defendant. Counsel
conduct in this instance, prejudiced this
defendant. In this instance counsel was
deficient in his duty as a crucible
adversary to the prosecution. . . . For the
ten (10) months leading-up to the trial date
counsel and defendant met and discussed the
case only twice, and those interactions were
very brief. Counsel was ill-prepared for a
trial such as this case. Counsel
demonstrated no particular expertise at
trying a child pornography case. The
federal public defenders office failed to
conduct an adequate investigation into all
of the facts pertaining to this case.
Because of the lack of diligent advocacy for
the defendant justice was denied.

(Id. at PageID 16–17.)

To the extent this discussion seeks to provide examples of
ineffective assistance, aside from those raised in Grounds One
through Four, it is conclusory. Nowhere does Evers specify what
other errors his counsel allegedly made, or what prejudice they
caused him at trial or on appeal. He contends merely that, for
example, he "was denied justice" and that "justice was denied."
Such conclusory claims are "insufficient to warrant § 2255
relief." Lovejoy, 1996 WL 331050, at *3; Dockery, 2015 WL
1486174, at *12.

The § 2255 Motion is DENIED as to Ground Five.

### G.   Grounds Six and Seven

Grounds Six and Seven of the § 2255 Motion make two claims about the U.S. Supreme Court's ruling in <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013). (§ 2255 Mot. at PageID 17.) First, Evers argues that, under <u>Alleyne</u>, he "should be resentenced without any upward departures that were not in the indictment . . . ." (<u>Id.</u>) Second, Evers argues that <u>Alleyne</u> is retroactive under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), such that this Court should apply <u>Alleyne</u> when considering the § 2255 Motion. (<u>Id.</u>) The Government responds that <u>Alleyne</u> is not retroactive under <u>Teague</u>. (<u>Id.</u> at 13–14.)

Answering the retroactivity question disposes of both of Evers's <u>Alleyne</u> claims. The Sixth Circuit has decided that <u>Alleyne</u> is not retroactive to cases on collateral review. <u>In re Mazzio</u>, 756 F.3d 487, 491 (6th Cir. 2014); <u>see also</u> <u>Vanbuhler v. United States</u>, No. CR 07-20265, 2016 WL 4011237, at *3 (E.D. Mich. July 27, 2016) (citing <u>Mazzio</u>).

The § 2255 Motion is DENIED as to Grounds Six and Seven. The § 2255 Motion is DENIED as to all grounds.

### IV.  APPEAL ISSUES

Under 28 U.S.C. § 2253(c)(2), a district court must evaluate the appealability of its decision denying a § 2255 motion and issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a

constitutional right." No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); see also Henley v. Bell, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam). A COA does not require a showing that the appeal will succeed. Miller-El, 537 U.S. at 337; Caldwell v. Lewis, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. Bradley v. Birkett, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, Evers is not entitled to relief. He cannot present a question of some substance about which reasonable jurists could differ. The Court DENIES a COA.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate

filing fee required by 28 U.S.C. §§ 1913 and 1917, a prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  Id. at 952.  Federal Rule of Appellate Procedure 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1). However, Federal Rule of Appellate Procedure 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, a prisoner must file his motion to proceed in forma pauperis in the appellate court.  See Fed. R. App. P. 24(a)(4)-(5).

In this case, because Evers is clearly not entitled to relief, the Court denies a COA.  It is CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal in forma pauperis is DENIED.[4]

**V.    CONCLUSION**

For the foregoing reasons, the § 2255 Motion is DENIED.

So ordered this 14th day of March, 2017.

---

[4] If Evers files a notice of appeal, he must also pay the appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the U.S. Court of Appeals for the Sixth Circuit within 30 days.

/s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE